FILED
2022 JAN 7 AM 10:08
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FITn40, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>GLANBIA NUTRITIONALS (IRELAND) LIMITED, GLANBIA PERFORMANCE NUTRITION LIMITED, GLANBIA PERFORMANCE NUTRITION (NA), INC., GLANBIA PERFORMANCE NUTRITION (MANUFACTURING), INC., and JOHN DOES 1-20,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00871-JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

This case arises from a trademark infringement dispute between Plaintiff FITn40, LLC ("FITn40" or "Plaintiff") and Defendants Glanbia Nutritionals (Ireland) Limited ("Glanbia Nutritionals"), Glanbia Performance Nutritional Limited, Glanbia Performance Nutrition (NA), Inc., Glanbia Performance Nutrition (Manufacturing), Inc., and John Does 1-20.[1] Defendants filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim. For the following reasons, the court GRANTS Defendants' motion.

### FACTUAL BACKGROUND

FITn40 is a limited liability company that operates out of Sandy, Utah. FITn40 develops, markets, and sells dietary nutritional supplements for individuals around the age of forty and

---

[1] The court refers to the named entity defendants as "Defendants" in the interest of brevity. Therefore, for purposes of this order, "Defendants" does not include John Does 1-20.

older to assist them in leading physically active lifestyles. FITn40 launched its nutritional supplements under the brand name "FITn40+" in December 2017.

FITn40 markets its nutritional supplements via its website, Facebook page, and Instagram account. FITn40 originally sold its products only on its website but has since expanded to Amazon, as well as several Utah grocery stores including Harmon's Neighborhood Grocer, County Market Stores, Meier's Meats and Fine Foods, and Big Y Grocery Stores.

In December 2019, FITn40 applied for a federal trademark for the word mark FITn40+. The United States Patent and Trademark Office granted the application as registration number 6,095,851.

Glanbia Nutritionals is an Irish limited liability corporation. According to FITn40, Defendants Glanbia Performance Nutrition Limited (Irish limited liability corporation), Glanbia Performance Nutrition (NA), Inc. (Florida corporation), and Glanbia Performance Nutrition (Manufacturing), Inc. (Delaware corporation) are all wholly owned subsidiaries of Glanbia Nutritionals. Defendants manufacture and sell dietary nutritional supplements in the United States.

In December 2019, Glanbia launched its "FIT 40" brand. Glanbia targeted the same market as Plaintiff's FITn40+ brand—active individuals around the age of forty and older. Glanbia sells its FIT 40 products via its website and third-party retailers like Amazon, Walmart, Vitamin Herb Store, and Supplement City.

FITn40 alleges that Defendants' use of the brand FIT 40 infringes on Plaintiff's FITn40+ brand. Plaintiff made various demands for Defendants to stop using the FIT 40 mark. Defendants refused. On December 11, 2020, FITn40 filed this lawsuit, alleging trademark infringement, unfair competition, unjust enrichment, and intentional interference with economic relations. On

June 1, 2021, Defendants moved to dismiss the lawsuit for failure to state a claim and lack of personal jurisdiction.

## LEGAL STANDARD

As the plaintiff, FITn40 bears the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). But when the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing." *Id.* To determine whether FITn40 has made its prima facie showing of jurisdiction, the court must "resolve any factual disputes in the plaintiff's favor." *Id.* Finally, "[i]n evaluating a motion to dismiss, we may consider not only the complaint, but also the attached exhibits." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011); *see also Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004) (court may consider "affidavits and other written material" on a motion to dismiss).

## ANALYSIS

The court looks to Utah law for the limits of its jurisdiction over out-of-state defendants. *See* FED. R. CIV. P. 4(k)(1)(A). Under Utah law, the state's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment." UTAH CODE § 78B-3-201(3). As a result, the court need only determine whether the exercise of personal jurisdiction over the defendant violates the Constitution's Due Process Clause. "The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and

substantial justice.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. Defendants argue that they have insufficient contacts with Utah to create either specific or general jurisdiction in this forum. FITn40 counters that the court can exercise general jurisdiction over the Defendants for three reasons. First, Defendants operate a website where Utah residents can purchase their products. Second, Defendants attended a Utah fitness conference ("FITCON") to directly solicit Utah consumers. Third, Utah consumers can purchase Defendants' products through third-party vendors located in Utah. Moreover, FITn40 argues that this court can exercise specific personal jurisdiction over Defendants for three related reasons. First, Defendants engage Utah residents to purchase Defendants' products and thereby infringe on FITn40's trademark while knowing that FITn40 is a Utah-based company. Second, Defendants operate a website with a clear nexus to Utah consumers. Third, Defendants attended Utah FITCON to engage Utah consumers.

The court begins by addressing whether Defendants' contacts suffice to establish general personal jurisdiction in Utah, then addresses specific jurisdiction over Defendants. Finally, the court considers FITn40's Rule 27(c) request to perpetuate testimony on jurisdiction. Because the court determines that it has no personal jurisdiction over Defendants, it does not address Defendants' 12(b)(6) arguments.

## I.     GENERAL PERSONAL JURISDICTION

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation and alterations omitted). But even if a corporation has not incorporated or operated a

principal place of business in a forum state, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction "does not require that the claim be related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008). Rather, if a corporation's contacts with the forum state render it essentially at home in the forum state, the state may assert jurisdiction over it on any matter, whether or not the matter arises out of the corporation's contacts with the state. *See Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 446-47 (1952). FITn40 argues that Defendants' operation of a website accessible to Utah consumers, the availability of Defendants' products at third-party vendors in Utah, and Defendants' trip to Utah FITCON to market products establish general jurisdiction over Defendants. The court addresses, and rejects, each argument below.

FITn40 has not alleged facts sufficient to demonstrate that Defendants' website establishes general jurisdiction in Utah.[2] Where the exercise of general jurisdiction depends on the operation of a website, "[t]he maintenance of a [website] does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011). "Nevertheless, most courts would agree that operating a [website] selling

---

[2] While FITn40 repeatedly refers to "Defendants' website," the complaint defines the website in question, optimumnutrition.com, as "Glanbia Nutritionals' Optimum Nutrition website." As Defendants note, FITn40's tendency to elide the difference between various corporate defendants injects confusion into its complaint and briefing. The court is unsure whether Glanbia Nutritionals bears sole responsibility for the website and any jurisdictional nexus that stems from it, or whether it should attribute contacts from the website to each of the entity defendants. Because the court finds that the website fails to establish personal jurisdiction, it need not resolve this confusion here.

products to residents of a state *can* subject the seller to general jurisdiction in that state, depending on the nature and degree of commercial activity with the forum state." *Id.* at 1243. But "[a] [website] will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions *on a sustained basis with a substantial number of residents* of the forum." *Id.* at 1243 (citation omitted). Essentially, the "commercial activity [must be] carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence within the state." *Id.* at 1246.

But FITn40 has not specifically alleged any particular sales to Utah residents via Defendants' website. Indeed, the sum total of FITn40's allegations connecting Defendants' website to commercial activity in Utah indicate that each Defendant "engaged in the manufacture and sale of dietary nutritional supplements in the United States, including Utah." ECF No. 6, ¶¶ 2-5. But this cursory allegation provides the court no information about the quantity or frequency of sales that Defendants made to Utah residents via their website. Nor does it allege facts regarding how long Defendants have sold their products in Utah. Indeed, the allegations do not even clarify whether the alleged sales to Utah residents occurred via Defendants' website or via a third-party distributor. Absent any allegations regarding the quantity, frequency, or duration of Defendants' commercial website activity targeting Utah, the court cannot determine whether Defendants used the website to conduct commercial transactions on a sustained basis with a substantial number of Utah residents.[3] Thus, the court cannot find that Defendants' website

---

[3] The court further notes that "only the well pled facts of a plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true" for purposes of determining personal jurisdiction. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The court need not address whether the allegations here are conclusory because, even considering the allegations, FITn40 has not sustained business in Utah that is tantamount to actual physical presence within the state. The court warns FITn40 to avoid conclusory allegations, should it choose to amend its complaint.

created contacts that "are so 'continuous and systematic' as to render them essentially at home in" Utah. *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).

Nor does FITn40's allegation that third-party vendors sell Defendants' products in Utah suffice to support general jurisdiction. Essentially, FITn40's allegation amounts to arguing that Defendants placed their products into the stream of commerce, which carried the products to Utah. But under Supreme Court precedent, while placing a product into the stream of commerce can "bolster the exercise of specific jurisdiction," it "do[es] not warrant a determination that, based on those ties, the forum has *general* jurisdiction over the defendant." *Goodyear*, 564 U.S. at 927; *see also B&R Plastics, Inc. v. Whitney Design, Inc.*, No. 08-cv-00914-MSK-MJW, 2009 WL 230706, at *3 (D. Colo. Jan. 29, 2009) ("[T]he 'stream of commerce' theory . . . . is inapplicable here, as it can only support a claim of specific jurisdiction, not general jurisdiction." (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788-89 & n.19 (7th Cir. 2003)). Defendants' decision to inject their dietary supplements and other products into the stream of commerce—even if Defendants knew that the third-party vendors might sell the products in retail stores in Utah—is insufficient for the court to exercise general personal jurisdiction over it. *See Goodyear*, 564 U.S. at 929 (criticizing the "sprawling view of general jurisdiction" that would make "any substantial manufacturer or seller of goods . . . amenable to suit, on any claim for relief, wherever its products are distributed"). To hold otherwise would mean general personal jurisdiction "would presumably be available in every . . . State in which [a defendant's] sales are sizable." *Daimler*, 571 U.S. at 139. According to the Supreme Court, "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that

conduct will and will not render them liable to suit.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

And, finally, the fact that Defendants traveled to Utah to market their products at one fitness conference does not alter the court's conclusion. A single visit to the forum state for marketing purposes does not establish "continuous and systemic contacts" with Utah. Nor does it render Defendants "essentially at home in the forum state." A corporation's place of incorporation or principal place of business form the paradigmatic bases for general jurisdiction. FITn40 cannot analogize a single marketing trip to the forum state to incorporation or operation of a principal place of business in the forum state. Accordingly, the court finds that it lacks general jurisdiction over the Defendants.

## II.   SPECIFIC PERSONAL JURISDICTION

The specific jurisdiction inquiry proceeds in two steps. First, the court determines whether the defendant has minimum contacts with the forum state such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the court considers whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 109 (1987) (citation omitted). Second, if the defendant's actions constitute sufficient minimum contacts, the court then considers whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Id.* at 113 (quoting *Int'l Show*, 326 U.S. at 316). This inquiry essentially asks whether the exercise of personal jurisdiction over a defendant with minimum contacts is

reasonable in light of the circumstances surrounding the case. *See id.* at 113-14. With this foundation in mind, the court proceeds to the present facts.

### A.        *Minimum Contacts*

To establish minimum contacts with the forum state, the plaintiff must demonstrate that the defendant "purposefully directed its activities at residents of the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (citation omitted). The purposeful direction inquiry "can appear in different guises." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). But, at bottom, the requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts" or "the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (citations omitted). Finally, if a defendant purposefully availed itself of a forum state, the court must additionally determine "whether a nexus exists between Defendant's forum-related contacts and the Plaintiff's cause of action." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing *Asahi*, 480 U.S. at 109).

In arguing that this court has jurisdiction, FITn40 points to three distinct "contacts" between Defendants and the forum state. First, FITn40 claims that Defendants operate a website that FITn40 contends targets Utah consumers. Second, FITn40 alleges that Defendants are infringing on its trademark while engaging Utah residents to purchase Defendants' products. Third, FITn40 contends that Defendants physically came to Utah to solicit Utah residents to purchase infringing products. The court considers each alleged contact in turn.

### i.        **Defendants' Website**

Defining specific personal jurisdiction in the internet context presents unique challenges. The Tenth Circuit observed that internet activities are "peculiarly non-territorial" because "the

internet operates 'in' every state regardless of where the user is physically located." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). Therefore, if "a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has a geographically limited judicial power, would no longer exist." *Id.* (citation omitted). Therefore, the simple operation of a commercial website accessible to individuals in a particular state does not, on its own, support the exercise of specific personal jurisdiction. *SEBO Am., LLC v. Azar*, No. 20-cv-03015-NYW, 2021 WL 720170, at *5 (D. Colo. Feb. 24, 2021) ("[T]he court cannot say that merely because Colorado residents can order from defendant, the defendant has purposefully directed its activities towards Coloradans any more than it has directed its activities towards the nations (or world) in general." (citation omitted)).

In response to the jurisdictional conundrum presented by websites, the Tenth Circuit "instructs that we are to examine whether the defendant 'deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 845 (10th Cir. 2020) (quoting *Shrader*, 633 F.3d at 1241). "[T]his emphasis on intentionally directing internet content or operations at the forum state has its grounding in the 'express aiming' requirement the Supreme Court developed in *Calder* [and] is compatible with [the Tenth Circuit's] discussion of personal jurisdiction in *Dudnikov*." *Shrader*, 633 F.3d, at 1241. The key attribute the court looks for is "the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Old Republic*, 877 F.3d at 908.

But FITn40 points to no instance where Defendants intentionally directed their internet activity at Utah. Rather, FITn40's allegations simply illustrate that Defendants maintained a

commercial website equally accessible in all fifty states. In light of these facts, *Shrader* is instructive. There, the Tenth Circuit found no specific personal jurisdiction over a defendant in a defamation case where the defendant posted "geographically-neutral content" on a "geographically-neutral . . . forum," with no suggestion that the defendant targeted his post at the forum state. *Shrader*, 633 F.3d at 1245-46. On the contrary, the Tenth Circuit observed in *Shrader* that "every indication is that [defendant] targeted the post at a nation-wide or world-wide audience of market traders with no inherent interest in or tie to [the forum state]." 633 F.3d at 1246; *see also Boppy Co. v. Luvee Prods. Corp.*, No. 04-MK-320, 2004 WL 2608265, at *4 (D. Colo. May 25, 2004) ("[T]he Court notes that many cases recognize that the 'purposeful' element is not satisfied by an interactive website that is generally available to persons nationwide (much less worldwide), but which does not specifically target residents of the forum state to a degree greater than any other users."); *Advisors Excel, LLC v. Senior Advisory Grp., LLC*, No. 11-4015-JAR, 2011 WL 3489884, at *7 (D. Kan. Aug. 10, 2011) (finding that website alone did not show that defendant expressly aimed its conduct at Kansas, even though it allowed interested users to provide their contact information, because "there is nothing particular about the operation or content of defendant's website that shows a connection with Kansas").

Although the present case arises in a different context than *Shrader* (trademark infringement, not defamation), the court finds that, like the website in *Shrader*, Defendants' website targeted a nationwide audience. Defendants' website included no Utah-specific content nor any advertisements directed particularly at Utah residents. Indeed, Defendants' website evinces no intent to target Utahns to a degree greater than users in any other state. *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 788 (5th Cir. 2021) (refusing to endorse the "sweeping view" that "[i]f [defendant] has minimum contacts with [the forum state], then it has

minimum contacts with all 50 states, for no other reason than that it put up a website"). The court does not consider such a geographically-neutral website to intentionally direct internet activity at the forum state.

In fact, FITn40 failed to include allegations in its complaint or offer any evidence that Defendants used their website to sell even a single infringing product to a Utah consumer. The sole allegation that ties Defendants to Utah is that each defendant "is engaged in the manufacture and sale of dietary nutritional supplements in the United States, including Utah." ECF No. 6, ¶¶ 2-5. But that allegation contains a glaring omission for purposes of specific personal jurisdiction. FITn40 fails to allege that Defendants marketed or sold any *infringing* products to Utah residents.[4] Moreover, FITn40 offered no affidavits or other evidence suggesting that Defendants sold or marketed infringing products to Utah consumers via their website. *See Admar*, 18 F.4th at 787 ("[T]here is no evidence that [defendant] targets Louisiana: [defendant] has not sold a single accused product to a Louisiana resident, and it solicits no business there through targeted advertising. That ends this case."). In sum, even viewing the evidence in the light most favorable to Plaintiff, FITn40 describes a geographically-neutral website with no allegation or evidence that the website resulted in even a single sale of an infringing product to Utah.

FITn40 counters that Defendants' website did, in fact, directly target Utah because the website included hyperlinks to third-party vendors located in Utah where Utah resident could purchase the infringing products. But the "Where to Buy" webpage on Defendants' website

---

[4] Indeed, the only reference to the sale specifically of FIT 40 (i.e., infringing) products in FITn40's complaint occurs when FITn40 states that "Glanbia's FIT 40 products instantly saturated the market in the United States." ECF No. 6, ¶ 28. But conclusory allegations about the infringing product being sold across the United States cannot replace specific allegations about whether Defendants sold the product in the forum state.

includes retailers like Walmart, GNC, and The Vitamin Shoppe—all nationwide retail chains with locations across the country, and in some instances, in all fifty states. *See* ECF No. 23-3, at 4-5. Including a hyperlink to such a nationwide third-party retailer reveals no intent to target Utah in particular.

Finally, FITn40 submits screenshots showing Defendants' products for sale at Utah locations of some of the third-party retailers referenced above (as well as other third-party retailers). But the vast majority of the screenshots contain products without FIT 40 branding. For purposes of specific personal jurisdiction, the court may consider only those contacts which directly relate to the cause of action, not general contacts between Defendants and the forum state. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (citation omitted)). Therefore, for purposes of specific jurisdiction, the court must disregard instances of non-infringing products for sale in Utah. After discarding evidence that includes only non-infringing products, only a single screenshot shows a FIT 40-branded product marketed by a third-party vendor in Utah. *See* ECF No. 23-2, at 13. In sum, FITn40's evidence demonstrates that one The Vitamin Shoppe store located in Sandy, Utah sells a FIT 40-branded product (although the product was out of stock at the time of the screenshot).

"[A] single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact." *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). But—critically—the contact must be purposeful. According to a plurality of Supreme Court justices, sale of a product by a third-party

retailer in the forum state, without more, does not establish the necessary purposeful direction. *See Asahi*, 480 U.S. at 111-112 (plurality opinion) (requiring "something more" than simply placing "a product into the stream of commerce," even if defendant is "awar[e]" that the stream "may or will sweep the product into the forum State"). In *Asahi*, the four plurality justices noted that "something more" could include "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." 480 U.S. at 112.

While the Tenth Circuit has not clearly adopted the *Asahi* plurality's "stream of commerce plus" approach, a number of "district courts in this circuit have held 'that something more than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes." *See Cagle v. Rexon Indus. Corp., Ltd.*, No. Civ-18-1209-R, 2019 WL 1960360 (W.D. Okla. May 2, 2019) (quoting *Fischer v. BMW of N. Am., LLC*, No. 18-cv-00120-PAB-MEH, 2019 WL 1331978, at *4 (D. Colo. Mar. 25, 2019)); *Lynch v. Olympus Am., Inc.*, No. 18-cv-00512-NYW, 2018 WL 5619327, at *4 n.5 (D. Colo. Oct. 30, 2018) (failing to find "a single court in the Tenth Circuit that . . . only requires a defendant to put the offending product into the stream of commerce without any action specifically directed at the forum itself"); *see also Monge v. RG Petro-Machinery (Grp.) Co. Ltd.*, 701 F.3d 598, 618 (10th Cir. 2012) (declining to adopt a particular stream of commerce test but making clear that "[s]pecific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else" (quoting *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004)).

This court agrees with the aforementioned district courts. In order for a contact to be considered purposeful, the contact must "represent an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum state." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1419 (10th Cir. 1988) (citation and alteration omitted). Thus, the court requires some modicum of intentionality on the defendant's part. Simply placing a product, which a third-party retailer fortuitously elects to sell in Utah, into the stream of commerce does not rise to the level of purposeful availment. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 891 (2011) (rejecting—by both the plurality and concurring opinions—that personal jurisdiction exists simply because defendant "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states" (citation omitted)); *see also Fischer*, 376 F. Supp. 3d at 1186 (rejecting jurisdiction where the plaintiff did not allege that the defendant specifically targeted Colorado with its distribution efforts and finding that a nationwide distribution system or marketing plan fails, standing alone, to demonstrate minimum contacts); *Lacebark, Inc. v. Sakata Seed Am., Inc.*, No. Civ-12-746-D, 2013 WL 12086778, at *3 (W.D. Okla. Jan. 16, 2013) ("The Tenth Circuit has not held that simply placing a product into a stream of commerce that ends in a forum state is sufficient, by itself, to permit suit within the state.").

FITn40 presents no evidence that Defendants placed the infringing product in the stream of commerce with the intent to target Utah. The Vitamin Shoppe has locations across the United States. FITn40 does not allege, nor does it provide any evidence, that Defendants specifically directed any sales to occur in Utah. Nor has FITn40 pointed to any "special state-related design, advertising, advice, marketing, or anything else" that demonstrates Defendants targeted Utah

when they placed their allegedly infringing products into the stream of commerce.[5] *See J. McIntyre Mach.*, 564 U.S. at 889 (Breyer, J., concurring). Absent evidence of "something more" than simply placing the product in a nationwide distribution network, the mere fact that FITn40 found Defendants' allegedly infringing product for sale at a third-party retailer in Utah does not satisfy Plaintiff's burden of establishing that Defendants purposefully directed their FIT 40 product at Utah.

In sum, FITn40 presents no allegations or evidence that Defendants intentionally directed their website at Utah, nor that Defendants sold any infringing goods to Utah residents via their website. Moreover, the fact that Defendants posted hyperlinks to third-party vendors with nationwide presences through which users could purchase Defendants' products does not suffice to establish purposeful direction on the part of Defendants. And, finally, the fortuitous sale of an allegedly infringing product by a third-party vendor in Utah does not rise to the level of purposeful direction necessary to establish minimum contacts.

### ii.    Trademark Infringement

FITn40 next argues that Defendants have minimum contacts with Utah "because Defendants have infringed and are currently infringing Plaintiff's trademark while continuously engaging Utah residents to purchase Defendants' products and while knowing that Plaintiff is a Utah company." ECF No. 23, at 19. In support of its argument, FITn40 cites to *Systems Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp. 2d 1093 (D. Utah 2003). In that case, the district

---

[5] The court discusses FITn40's argument that Defendants physically came to Utah to market their products below in section II.A.iii.

court relied on cases from the Ninth and Seventh Circuits to hold that trademark infringement plus "something more" can establish jurisdiction.[6] *Id.* at 1099.

In caselaw that post-dates *Systems Designs*, the Tenth Circuit provides further guidance for applying the "something more" requirement. Specifically, in *Dudnikov*, the Tenth Circuit held that "mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant." 514 F.3d at 1077; *see also Shrader*, 633 F.3d at 1244 ("[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction . . . ."). Rather, in showing "something more" than mere foreseeability, the plaintiff must show that the defendant "undertook *intentional actions that were expressly aimed at that forum state*," such that the forum state constituted the "focal point" of Defendants' actions. *Dudnikov*, 514 F.3d at 1077 (satisfying *Calder* requires showing that

---

[6] The *Systems Designs* court first expressed that trademark infringement alone could likely establish jurisdiction because "[i]n light of easy nationwide accessibility of the trademark registry . . . the 'effects' of the infringement are easy to determine: there is a *national listing* indicating exactly which state will feel the 'effects' of the infringement." *Id.* at 1099. But instead of creating a *per se* rule regarding jurisdiction in trademark infringement cases, the court held that trademark infringement plus "something more"—in *Systems*, the fact that the defendant knew plaintiff was based in Utah and targeted Utah residents on its website—created jurisdiction.

At least one court has criticized the *Systems Designs* court's decision to "place[] a premium on the fact that the defendant was on notice that the plaintiff had registered the trademark in Utah." *Franklin Covey Co. v. Com. Metals Co.*, No. 2:16-cv-1221-CW, 2017 WL 3503366, at *4 (D. Utah Aug. 15, 2017). In *Franklin Covey*, the court held that the *Systems Designs* court "improperly focuses on the plaintiff's conduct, which the Supreme Court held in *Walden* is irrelevant to the minimum contacts analysis." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.")). Because "the [*Systems Designs*] defendant's use of the trademarked name was unrelated to Utah other than that the plaintiff felt the injury here," the *Franklin* court found *Systems Designs* unpersuasive. *Id.*

Finally, the court notes that the *Systems Designs* decision occurred in 2003. The internet—as well as the caselaw surrounding it—has experienced significant development since that date.

"defendants acted with more than foresight (or knowledge) that effects would be felt in Colorado").

For largely the same reasons discussed above, FITn40 has failed to point to any evidence that Defendants undertook intentional actions to target Utah or that Utah was the "focal point" of Defendants' actions. Indeed, FITn40 has failed to allege that Defendants themselves sold even a single infringing product in Utah. Instead, FITn40 provided evidence that a single third-party vendor markets one infringing product in Utah. But the sale of a product by a third-party vendor with a nationwide distribution network—without any indication that Defendants targeted Utah for the sale of that product—does not constitute "express aiming" at Utah. Stated differently, FITn40 has adduced no evidence that Defendants deliberately directed any infringing products at Utah. In sum, even if the court relies on the "trademark infringement plus something more" test advanced by the *Systems Designs* court, FITn40 has failed to show that Defendants did "something more" to expressly target Utah with its infringing products.

### iii.     In-Person Solicitation

In a last-ditch effort to demonstrate that Defendants deliberately targeted Utah with their allegedly infringing products, FITn40 raises an additional, novel contact with Utah in its response brief. Specifically, FITn40 writes that "Defendants have physically come to Utah to attend the Utah FITCON to market their products, including the infringing FIT 40 products, directly to Utah consumers." ECF No. 23, at 24. As evidence, FITn40 cites the attached Exhibit A (ECF No. 23-1).[7]

---

[7] Defendants object to FITn40's Exhibits on relevance grounds. *See* FED. R. EVID. 402. Defendants argue that the Exhibits fail to identify any named Defendant and that the contents of the Exhibits are not related to the named Defendants. The court disagrees. FITn40 identified Optimum Nutrition as Glanbia Nutritionals' website. Therefore, at minimum, the Exhibits relate to Glanbia Nutritionals' products. And though many of the Exhibits include images of products

But in examining ECF No. 23-1, the court finds no evidence that any product bearing the infringing trademark was marketed, sold, or even appeared at the Utah FITCON gathering. Neither the screenshots of YouTube videos nor screenshots of FITCON marketing show any indicia of the FIT 40 brand. Rather, ECF No. 23-1 only establishes that Optimum Nutrition—which FITn40 refers to as "Glanbia Nutritionals' website"—attended Utah FITCON and marketed unspecified products.[8] The court confines its specific jurisdiction inquiry to "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). The fact that Defendants came to Utah to market unspecified products does not establish specific jurisdiction in this trademark infringement case.

Rather, Defendants' marketing in Utah is only relevant insofar as Defendants targeted Utah *with the infringing products*. But FITn40 makes no such allegation in its complaint, nor does it provide any evidence that Defendants marketed the infringing products while in Utah. Instead, FITn40 relies solely on its conclusory statement in its response brief that the products marketed at Utah FITCON included the infringing products. *See* ECF No. 23, at 24 ("Defendants have physically come to Utah to attend the Utah FITCON to market their products, including the

---

that are not at issue in this case (i.e., do not contain the allegedly infringing branding), any contacts between a defendant and the forum state are relevant to the general jurisdiction inquiry discussed above. Thus the court overrules Defendants' objections.

[8] FITn40's failure to distinguish between the corporate Defendants causes some confusion here. ECF No. 23-1 contains no evidence that any of the named Defendants themselves attended the FITCON gathering. Aside from its reference that Optimum Nutrition is Glanbia Nutritionals' website, FITn40 fails to clarify whether the court should consider Optimum Nutrition an agent of Glanbia Nutritionals. And even if Optimum Nutrition is an agent of Glanbia Nutritionals, FITn40 includes no allegations tying Optimum Nutrition to the other corporate defendants. Therefore, there appears to be no allegation that ties Glanbia Performance Nutrition Limited, Glanbia Performance Nutrition (NA), Inc., or Glanbia Performance Nutrition (Manufacturing), Inc. to any physical presence in Utah at FITCON.

infringing FIT 40 products, directly to Utah consumers."). But statements appearing only in a brief without support by reference to the pleadings or other evidence fall outside of the realm of evidence the court considers when ruling on Defendants' motion to dismiss. *See AGM-Nev., LLC v. Steigelman*, No. 1:10-cv-01045-MV-RHS, 2012 WL 13081194, at *4 n.2 (D.N.M. Jan. 31, 2012) ("The Court will not consider statements appearing only in a brief that are not supported by reference to the pleadings or other evidence in the record when ruling on [a defendant's] motion to dismiss." (citing *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). Absent allegations or evidence that Defendants marketed infringing products to Utah consumers at FITCON, Defendants' physical presence in Utah does not establish specific personal jurisdiction.

### B.    Reasonableness

Because the court finds minimum contacts lacking, it need not proceed to the second step of the specific jurisdiction analysis, whether the exercise of jurisdiction over Defendants would offend traditional notions of fair play and substantial justice.

Accordingly, finding neither general nor specific jurisdiction, the court determines that it has no personal jurisdiction over Defendants.

## III.    RULE 27(C) PERPETUATION OF AN ACTION

In the alternative, FITn40 requests to perpetuate testimony under Federal Rule of Civil Procedure 27(c). Rule 27 allows a party to depose persons in order to perpetuate testimony in advance of possible future litigation in federal court. The Rule "properly applies only in that special category of cases where it is necessary to prevent testimony from being lost." *Ash v. Cort*, 512 F.2d 909, 911 (3d Cir. 1975). Rule 27(c) provides that Rule 27 "does not limit the court's

power to entertain an action to perpetuate testimony." FITn40 asserts that Rule 27(c) allows for jurisdictional discovery regarding Defendants' contacts with Utah.

FITn40 clearly misunderstands Rule 27(c). As the Advisory Committee note makes clear, Rule 27(c) serves only to preserve the right to an action to perpetuate testimony under a specific statute that was in effect when Congress approved Rule 27. *See* FED. R. CIV. P. 27(c) advisory committee's note to subdivision (c). Such depositions had been provided for by 28 U.S.C. § 644 (now repealed) and thus the Rule included subsection (c) to make clear that separate actions under that statute survived the passage of Rule 27. *See Nevada v. O'Leary*, 63 F.3d 932, 936-37 (9th Cir. 1995) (holding that Rule 27(c) "was intended to preserve the right to employ a separate action to perpetuate testimony under former section 644 of Title 28 that is now repealed."). Rule 27(c) is not a general mechanism for jurisdictional discovery. Thus, the court denies FITn40's request for a Rule 27(c) perpetuation of this action.

But FITn40 is not without recourse. During oral argument, counsel for FITn40 orally moved for leave to amend in the event that the court granted the motion to dismiss. Amendments that are not permitted as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure require written consent from the opposing party or leave of the court. FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted).

Here, FITn40 suggests that it can assert new allegations that would demonstrate this court's personal jurisdiction over the Defendants. Indeed, counsel for FITn40 indicated that it

had conducted additional relevant investigation since filing the amended complaint. Therefore, the court GRANTS FITn40 twenty-one days from the date of this order to amend its complaint, if it can, to allege facts showing why this court has personal jurisdiction over *each* of the named Defendants. *See Newsome v. Gallacher*, 722 F.3d 1257, 1265-66 (10th Cir. 2013) ("[P]ersonal jurisdiction requirements must be met as to each defendant." (citation omitted)).

*     *     *

Because the court dismisses this case on personal jurisdiction grounds, it need not reach Defendants' argument that FITn40 has failed to state a claim by neglecting to differentiate between the named Defendants or allege how each individual Defendant violated FITn40's rights. However, if FITn40 chooses to amend its complaint to cure the jurisdictional deficiencies, the court urges FITn40 to review the specificity of its allegations as to each Defendant as well.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Therefore, any amended complaint filed by Plaintiff must specify which allegations apply to which defendant or defendants. *See Schwab v. Kan. Dep't of Child. & Fams.*, 851 F. App'x 110, 116 (10th Cir. 2021) (unpublished) ("[C]ollective allegations are insufficient to put [Defendants] on notice of the wrongful acts they allegedly committed."); *Matthews v. Bergdorf*, 889 F.3d 1136, 1148 (10th Cir. 2018) ("A complaint that fails to differentiate wrongful acts among multiple defendants . . . does not provide the fair notice that the law requires."); *United States ex rel. Dillahunty v. Chromalloy Okla.*, No. CIV-08-944-L, 2009 WL 3837294, at *4 (W.D. Okla. Nov. 16, 2009) ("Because [Plaintiff] fails to differentiate between and among the defendants, defendants do not individually have fair notice of the claims against them or the factual basis for those claims."). Plaintiff should limit itself to naming

defendants against whom it can allege a plausible claim. If Plaintiff discovers through the course of litigation that additional parties should have been named, Plaintiff may seek leave to add additional parties at that time.

At bottom, whenever a lawsuit names multiple parties the complaint must give fair notice to each defendant, including who is alleged to have committed which acts. The court cautions FITn40 to err on the side of specificity in any amended complaint.

## CONCLUSION

The court GRANTS Defendant's motion to dismiss. Plaintiff's amended complaint is DISMISSED WITHOUT PREJUDICE. The court GRANTS Plaintiff twenty-one days from the date of this order to amend its complaint.

DATED January 7, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge